UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARYAM ALHARIRI, a/k/a MARYAM
ALHARIR, and ABDULLA HUSSEIN
ALHARIRI, a/k/a ABDULLA HUSSEIN
ALHARIR,

                     Plaintiffs,

         -against-

ANTONY BLINKEN, U.S. Secretary of State,
U.S. DEPARTMENT OF STATE, SHAN SHI,
Foreign Service Officer, RENA BITTER,
Assistant Secretary for Consular Affairs, JULIE
M. STUFFIT, Deputy Assistant Secretary for
Visa Services, ALEJANDRO MAYORKAS,
Secretary of the Department of Homeland
Security, UR JADDOU, Director of the United
States Immigration and Citizenship Service,
U.S. EMBASSY IN DJIBOUTI, CONSULAR
CHIEF, U.S. Embassy in Djibouti,

                   Defendants.

---

**MEMORANDUM & ORDER**
**22-CV-1036 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Maryam Alhariri a/k/a/ Maryam Alharir ("Maryam")
and Abdulla Hussein Alhariri a/k/a/ Abdulla Hussein Alharir
("Abdulla") bring this action against U.S. Secretary of State An-
tony Blinken, the U.S. Department of State, Foreign Service
Officer Shan Shi, Assistant Secretary for Consular Affairs Rena
Bitter, Deputy Assistant Secretary for Visa Services Julie M.
Stufft, Secretary of the U.S. Department of Homeland Security
("DHS") Alejandro Mayorkas, Director of U.S. Citizenship and
Immigration Services ("USCIS") Ur Jaddou, the U.S. Embassy in
Djibouti, and the Consular Chief of the U.S. Embassy in Djibouti
(collectively, "Defendants"), alleging violations of federal and

state laws in connection with the denial of Abdulla's visa application. (Third Amended Complaint ("TAC") (Dkt. 52).) Pending before the court is Defendants' motion to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot. (Dkt. 59).) For the reasons that follow, Defendants' motion to dismiss is GRANTED. Because Plaintiffs have not requested leave to amend, such dismissal is WITH PREJUDICE.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

"Congress establishes the terms of noncitizen entry into the United States, and the Department of State implements those requirements at its embassies and consulates in foreign countries." *Chen v. Blinken*, No. 23-CV-2279 (NGG), 2025 WL 606221, at *1 (E.D.N.Y. Feb. 25, 2025).[1] Typically, noncitizens residing outside of the United States must obtain a visa to be admitted to the United States. *Id.* Congress enacted a "streamlined" visa application process for noncitizens with immediate relatives in the United States, whereby the citizen (or permanent resident) files a petition with USCIS to classify the noncitizen as an immediate relative, and, if USCIS approves the petition, then the noncitizen-relative may apply for an immigrant visa. *See Dep't of State v. Muñoz*, 602 U.S. 899, 904 (2024); 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A), 1201(a), 1202(b). A United States consular officer located in the consular district in which the noncitizen resides then reviews the noncitizen's visa application, interviews the applicant, and decides whether to issue the noncitizen a visa to enter the United States. *See* 8 U.S.C. §§ 1201(a)(1), 1202; 22 C.F.R. §§ 42.61, 42.62. If the consular officer determines that the noncitizen is ineligible for admission into the United States, the officer must provide the noncitizen with a timely written notice

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

that "(A) states the determination, and (B) lists the specific pro-vision or provisions of law under which the [noncitizen] is inadmissible." 8 U.S.C. § 1182(b)(1).

### B. Factual and Procedural Background[2]

#### 1. Immigrant Visa Application

Plaintiff Maryam Alhariri is a lawful permanent resident of the United States and resides in Brooklyn, New York. (TAC ¶ 29.) On July 9, 2009, Maryam filed an I-130 petition[3] (the "Petition"), requesting that USCIS classify her son, Plaintiff Abdulla Hussein Alhariri, as her "unmarried child under 21 [years of age]." (*Id.* ¶ 44.) Abdulla was born in Yemen on September 3, 1988, and cur-rently resides in Egypt.[4] (*Id.* ¶ 30.)

USCIS approved Maryam's Petition on February 4, 2011, and thereafter forwarded the Petition to the U.S. Department of State National Visa Center ("NVC"). (*Id.* ¶¶ 46-47.) At some point thereafter, Abdulla submitted an immigrant visa application. On April 12, 2016, a consular officer at the United States Embassy in Kuala Lumpur, Malaysia (the "Kuala Lumpur Embassy") inter-viewed Abdulla and requested that Abdulla and Maryam submit proof of identity and a DNA test to confirm their mother-son re-lationship. (*Id.* ¶¶ 50-51.) Plaintiffs complied with the request,

---

[2] The following facts are drawn from the TAC and, for purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

[3] "A citizen or lawful permanent resident of the United States may file Form I-130, Petition for Alien Relative, with [USCIS] to establish the exist-ence of a relationship to certain alien relatives who wish to immigrate to the United States." *Instructions for Form I-130, Petition for Alien Relative, and Form I-130A, Supplemental Information for Spouse Beneficiary*, Depart-ment of Homeland Security, U.S. Citizenship and Immigration Services (Apr. 1, 2024), https://www.uscis.gov/sites/default/files/docu-ment/forms/i-130instr.pdf [https://perma.cc/73PD-FSYL].

[4] At the time of his visa application, Abdulla resided in Malaysia. (TAC ¶ 98.)

and Abdulla had his second interview at the Kuala Lumpur Embassy on August 12, 2016. (*Id.* ¶¶ 52, 54.)

On August 16, 2016, the Kuala Lumpur Embassy preliminarily denied Abdulla's visa application on the ground that his "application requires further administrative review" pursuant to Immigration and Nationality Act ("INA") Section 221(g) (codified at 8 U.S.C. § 1201(g)). (First Kuala Lumpur Denial (Dkt. 52-1) at ECF p. 51; TAC ¶ 55.) The denial also directed Abdulla to "submit any supplemental information requested." (First Kuala Lumpur Denial at ECF p. 51.) Thereafter, on September 23, 2016, the Kuala Lumpur Embassy issued a second denial of Abdulla's visa application on "other" grounds pursuant to INA Section 221(g). (Second Kuala Lumpur Denial (Dkt. 52-1) at ECF p. 57.) The Kuala Lumpur Embassy "[r]eccomend[ed] to USCIS to revoke [Abdulla's] petition" and returned the Petition to USCIS for further review. (*Id.*; TAC ¶¶ 56-57.)

On April 20, 2017, USCIS issued a Notice of Intent to Revoke ("NOIR") the Petition on the following grounds: (1) Abdulla submitted his petition under a false name, Abdulla Hassan Alkatabi (in contrast to his stated name, Abdulla Hussein Alhariri); (2) Abdulla was married, not single; and (3) although Maryam "claimed that [she] divorced [her] first husband," Hassan Alkatabi, and subsequently married a different man, "USCIS records establish that [Maryam] [was] currently living with [her] divorced spouse" in Brooklyn, New York. (Notice of Intent to Revoke (Dkt. 52-2) at ECF p. 60.) USCIS explained: "Because the identity used in filing this [Petition] is fictitious and the Beneficiary [Abdulla] is already married, he does not qualify for the (F22) category, INA Section 203(a)(2)(A). Please be advised that this information was not available to USCIS at the time this [Petition] was approved on February 4, 2011." (*Id.*) Additionally, USCIS stated that Maryam "failed to provide sufficient evidence

or testimony that a parent/child relationship exists" between herself and Abdulla. (*Id.*) As such, USCIS notified Plaintiffs of its intent to revoke the Petition, and provided them with 30 days "to submit evidence in opposition to the grounds stated for this intended revocation." (*Id.* at ECF p. 61.)

Plaintiffs, through counsel, responded to the NOIR on May 16, 2017. (Response to NOIR (Dkt. 52-1) at ECF pp. 63-65.) Plaintiffs "enclosed a full evidence package to their Response," containing:

> Abdulla's birth certificate; Abdulla's Yemeni passport; Maryam's certificate of marriage to her second husband; Maryam's divorce documents from her previous marriage; tax return and declaration evidence demonstrating that Maryam resided with her first son, Hussein Alkatabi, [in Brooklyn]; and affidavit and documentary evidence from Yemeni authorities proving Abdulla's true identity is true and that he is unmarried.

(TAC ¶ 60.) Subsequently, on June 22, 2017, USCIS revoked its approval of Maryam's Petition on the same grounds listed in the NOIR: (1) Abdulla submitted his petition under a false name; (2) there was clear and convincing evidence that Abdulla was currently married; and (3) Maryam currently resided with her divorced spouse despite her claim that she had remarried. (*See* USCIS Decision (Dkt. 52-1) at ECF pp. 67-70.) Plaintiffs appealed the revocation to the Board of Immigration Appeals ("BIA"), which remanded the case on July 21, 2020. (TAC ¶¶ 62-63; BIA Decision (Dkt. 52-1) at ECF pp. 94-95.) Specifically, the BIA explained that counsel for DHS "requested that the matter be remanded . . . for further consideration," and Plaintiffs "[had] not filed an opposition to this request." (BIA Decision at ECF p. 95.) As such, the BIA remanded the case "for further consideration and for the entry of a new decision." (*Id.*)

On May 4, 2021, Plaintiffs filed a threat of litigation with the U.S. Attorney's Office for the Eastern District of New York to request assistance regarding the adjudication of the Petition. (TAC ¶ 94.) On June 29, 2021, Plaintiffs inquired with USCIS regarding the status of the Petition on remand. (*Id.* ¶ 93.)

### 2. Procedural History

On February 25, 2022, Plaintiffs filed suit against Defendants, alleging numerous violations of federal and state laws and requesting that the court compel Defendants to adjudicate the Petition. (Compl. (Dkt. 1).) Thereafter, on June 29, 2022, USCIS notified Plaintiffs that their Petition "ha[d] been approved" and forwarded the Petition to the NVC. (*Id.* ¶ 96; Second Petition Approval (Dkt. 52-1) at ECF p. 391.) Because Abdulla no longer resided in Malaysia, Plaintiffs transferred their case from the U.S. Embassy in Kuala Lumpur to the U.S. Embassy in Djibouti (the "Djibouti Embassy"). (TAC ¶¶ 97-99, 131.)

Plaintiffs filed their First Amended Complaint on November 14, 2022, again alleging numerous violations of federal and state laws, but this time requesting that the court compel Defendants to process Abdulla's visa application and schedule a visa interview. (First Amended Complaint (Dkt. 20).)

On January 3, 2023, Abdulla appeared alone for an interview with a consular officer at the Djibouti Embassy. (TAC ¶ 132.) When the consular officer asked Abdulla if he was married and Abdulla responded in the negative, the consular officer allegedly responded, "I do not trust Yemeni people and I do not believe that you have not married yet." (*Id.* ¶¶ 145-47). The consular officer then provided Abdulla with a notice indicating that his visa application had been denied pursuant to Section 221(g) of the INA. (*See* First Djibouti Denial (Dkt. 52-1) at ECF p. 481.) The notice provided that Abdulla's "application requires administrative processing before we are able to determine whether you are eligible for a visa," and instructed Abdulla to complete Form DS-

5535 and submit additional documents predating the filing of the Petition to prove Abdulla's age, identity, and status as a single person. (*Id.*; TAC ¶ 152.) Abdulla submitted Form DS-5535 online, and his attorney submitted the remaining documentation to the Djibouti Embassy on several occasions, attaching Abdulla's completed Form DS-5535 to each submission. (*Id.* ¶¶ 157-159.) The Djibouti Embassy ultimately received Abdulla's Form DS-5335 on May 23, 2023. (*See* Supplemental Declaration of Joseph F. Carilli, Jr. (Dkt. 42-1) ¶¶ 6-7; *see also* TAC ¶¶ 178-80 (incorporating by reference the Supplemental Declaration of Joseph F. Carilli, Jr.).)

Plaintiffs filed their Second Amended Complaint on January 19, 2024. (Second Amended Complaint (Dkt. 46).) Soon thereafter, on February 12, 2024, the consular officer in Djibouti notified Abdulla that his visa application had been denied pursuant to Section 212(a)(6)(C)(i) of the INA, which provides that "any [person] who, by fraud of willfully misrepresenting a material fact, seeks to procure . . . a visa . . . is inadmissible." 8 U.S.C. §1182(a)(6)(C)(i). (Second Djibouti Denial (Dkt. 52-1) at ECF p. 619.) The Embassy acknowledged receipt of certain documents submitted by Plaintiffs in response to the Embassy's request for "documentation to . . . confirm your identity . . . that predate[s] the filing of [Maryam's] IR5 petition," including:

> (1) a copy of a Yemeni identity card issued 2007 bearing the name Abdulla Hussein Saleh al-Hariri; (2) a copy of a Yemeni passport issued 2011 bearing the name Abdullah Hussein Saleh al-Hariri; (3) a copy of a Yemeni passport issued 2013 bearing the name Abdullh [sic] Hussein Saleh al-Harir [sic]; (4) a copy of a Yemeni passport issued in 2015 bearing the name Abdullah Hussein Saleh al-Hariri; (5) a copy of a Yemeni passport stamped canceled issued 2015 bearing the

name Abdullah Hussein Saleh al-Hariri; (6) a copy of a Yemeni identity card issued in 2012; and (7) an employment identification card issued in 2022.

(*Id.* (emphasis omitted).) However, the Embassy "determined that these [documents] [did] not meet the requirements for establishing [Abdulla's] identity." (*Id.*) The Embassy explained:

> Although the documents bear the name Abdulla Hussein Saleh al-Hariri, there is still reason to believe that you are not the individual named on the visa petition because our investigation revealed that you are applying for an immigration benefit under a false identity. If you can produce additional evidence that would overcome the basis for this ineligibility finding, then consistent with State Department regulations at 22 C.F.R. section 42.81(e) you may produce that evidence within one year and a consular officer will reconsider your ineligibility finding.

(*Id.* at ECF p. 620.) Accordingly, the Embassy "refused" Abdulla's application for an immigrant visa on the basis of his ineligibility. (*Id.* at ECF p. 619.)

Plaintiffs filed the operative Third Amended Complaint on July 26, 2024, alleging five causes of action: (1) "Consular Officers Determination Made in Bad Faith"; (2) "Violation of INA's Non-discrimination Clause," 8 U.S.C. § 1152(a); (3) "Violation of Statutory Right to Counsel," 5 U.S.C. § 555(b); (4) "Violation of Fifth Amendment Equal Protection"; and (5) "Breach of Contract." (TAC ¶¶ 544-610.) In their prayer for relief, Plaintiffs request that the court, among other things, "[d]eclare" the foregoing violations and "[m]andate" that the Defendants: adjudicate Plaintiffs' visa application "in compliance with Department of State regulations, rules and procedures" and "adopt policies, procedures, and practices for the processing and adjudication of all visa applications and the conducting of visa interviews" that comply with the "statutory right to counsel" and

the Fifth Amendment right to equal protection. (*Id.* ¶¶ 611-21.) Defendants filed their fully briefed motion to dismiss the TAC on January 10, 2025. (*See* Defs.' Mot.; Pls.' Opp. (Dkt. 60); Defs.' Reply (Dkt. 61).)

## II. LEGAL STANDARDS

### A. Rules 12(b)(1) and 12(b)(6)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty,* 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). After construing all ambiguities and drawing all inferences in the plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) "if it lacks the statutory or constitutional power to adjudicate it." *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* Dismissal for failure to state a claim is appropriate

if it is clear from the face of the complaint that a claim is barred as a matter of law. *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019).

In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). In addition to the complaint, the court may consider "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). A document is integral to the complaint when the complaint "relies heavily upon [the document's] terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

When faced with a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), a court should "decide the jurisdictional question under Rule 12(b)(1) first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *McClain v. New York State Dept. of Tax'n & Fin.*, No. 13-CV-3104 (NGG) (RML), 2014 WL 4101517, at *2 (E.D.N.Y. Aug. 18, 2014).

## B. The Doctrine of Consular Nonreviewability

It is well-established that the "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments [and is] largely immune from judicial control.'" *Muñoz*, 602 U.S. at 907 (citing *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). When Congress delegates to executive officials the discretionary authority to admit noncitizens, an official's decision to admit or exclude a noncitizen "is final and conclusive." *Id.* at 907-08. The judiciary has *no role* to play "unless expressly authorized by law." *Id.* at 908. Because the

INA does not authorize judicial review of a consular officer's denial of a visa, "as a rule, the federal courts cannot review those decisions." *Id.*; *Quadar v. Mayorkas,* No. 18-CV-6817 (KPF), 2021 WL 1143851 at *5 (S.D.N.Y. Mar. 24, 2021) ("[A] court presented with a petition challenging the decision of a consular officer [cannot] review [that] decision, even if its foundation was erroneous, arbitrary, or contrary to agency regulations."). This is known as the doctrine of consular nonreviewability. *Muñoz,* 602 U.S. at 908.

The doctrine of consular nonreviewability is subject to one narrow exception: "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Trump,* 585 U.S. at 703. If the denial of a visa burdens the constitutional rights of a U.S. citizen, the court may consider whether the Executive "gave a facially legitimate and bona fide reason for denying the visa." *Muñoz,* 602 U.S. at 908. "If so, the inquiry is at an end—the Court has [no] authority to look behind the exercise of that discretion." *Id.* To demonstrate a facially legitimate and bona fide reason for denying a visa application, "the Government need only identify a properly construed statute that provides a ground of exclusion and provide the consular officer's assurance that he or she knows or has reason to believe that the visa applicant has done something fitting within the proscribed category." *Guy v. Blinken,* No. 22-CV-6889 (BMC), 2023 WL 4665764, at *2 (E.D.N.Y. July 20, 2023) (citing *Am. Academy of Religion v. Napolitano,* 573 F.3d 115, 126 (2d Cir. 2009)). Such an assurance "is bona fide in the absence of an allegation that the consular officer acted in bad faith." *Id.*

## III. DISCUSSION

Defendants move to dismiss the TAC pursuant Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[5] (Defs.' Mot. at 8-10.) Plaintiffs oppose the motion. (*See generally* Pls.' Opp.) The court considers each basis for dismissal in turn.

### A.  Rule 12(b)(1)

The TAC invokes the court's jurisdiction under 28 U.S.C. §§ 1331 and 2201, and 5 U.S.C. §§ 702-706. (TAC ¶ 26.) Defendants argue that: (1) the doctrine of consular non-reviewability bars Plaintiffs' TAC in its entirety; (2) the U.S. Court of Federal Claims has exclusive jurisdiction over Count 5, the breach of contract claim; and (3) sovereign immunity applies to Counts 2 and 4. (Defs.' Mot. at 12-18.)

As to consular nonreviewability, the Supreme Court recently held that "the doctrine of consular nonreviewability is not jurisdictional." *Muñoz*, 602 U.S. at 908 n.4; *see also Esghai v. U.S. Dep't*

---

[5] In support of their motion to dismiss, Defendants submit the Declaration of Melody A. Brukiewa. (*See* Brukiewa Decl. (Dkt. 59-1).) Ms. Brukiewa is a State Department employee who works as an attorney-advisor in the Office of Assistant Legal Adviser for Consular Affairs. (*Id.* ¶ 1.) The court will not consider Ms. Brukiewa's Declaration in adjudicating Defendants' motion to dismiss. Ms. Brukiewa executed her Declaration on November 14, 2024, nearly four months after Plaintiffs filed the TAC on July 26, 2024. (*Compare* Brukiewa Decl. *with* TAC.) Furthermore, in preparing her Declaration, Ms. Brukiewa reviewed the State Department's electronic Consular Consolidated Database ("CCD"), which appears to contain documents and/or information that have not been made available to Plaintiffs. (*See* Brukiewa Decl. ¶¶ 1-3.) Because the Declaration did not exist prior to the commencement of this action, it was not—and could not have been—attached to the TAC or incorporated in it by reference. *See Strock*, 982 F.3d at 63. The Declaration also cannot have been integral to the TAC because the TAC could not have relied upon the "terms and effect" of a declaration that did not yet exist. *See DiFolco*, 622 F.3d at 111. Accordingly, the court will not consider the Declaration in deciding Defendants' motion to dismiss.

*of State*, No. 24-CV-2993 (PAE), 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024) (citing *Muñoz* and rejecting defendant's argument that the court lacks subject matter jurisdiction); *Rashed v. Blinken*, No. 24-CV-964 (PAE), 2024 WL 4904701, at *3 (S.D.N.Y. Nov. 27, 2024) (same). A court's dismissal of a claim "based on consular reviewability is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Esghai*, 2024 WL 4753799, at *3 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021)). Therefore, Defendants' argument that the doctrine of consular nonreviewability deprives the court of subject matter jurisdiction is without merit.

As to Count 5, Defendants argue that the Contract Disputes Act (the "CDA") "provides the only waiver of sovereign immunity for contract disputes with the government," and requires that such claims be filed in the U.S. Court of Federal Claims. (Defs.' Mot. at 18.) However, Plaintiffs correctly point out that the CDA, as amended by the Tucker Act, provides federal district courts and the Court of Federal Claims with concurrent jurisdiction over breach of contract claims not exceeding $10,000. (Pls.' Opp. at 11-12 (citing 28 U.S.C. § 1346(a)(2)).) *See Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999) (noting that the Tucker Act amended the CDA). Indeed, in *United States v. Mitchell*, the Supreme Court held that by providing concurrent jurisdiction in the district courts over claims not exceeding $10,000, the Tucker Act "constitutes a waiver of sovereign immunity with respect to those claims." 463 U.S. 206, 212 (1983). Plaintiffs' TAC does not allege a damages amount; it simply states that Defendants "caused [Plaintiffs] damages in the form of prolonged separation from their family." (TAC ¶ 610.) Nevertheless, for purposes of the instant motion to dismiss, the court assumes that the damages amount is less than $10,000, such that the court has jurisdiction over Plaintiffs' breach of contract claim. While the court ultimately dismisses Count 5 on its merits, *see*

*infra* Section III.B.5, Defendant's request to dismiss this claim for lack of subject matter jurisdiction is denied.

Finally, Defendants argue that Counts 2 and 4 must be dismissed because Plaintiffs have not identified a waiver of sovereign immunity as to those claims. (Defs.' Mot. at 12-18.) Defendants cite no INA-specific authority on this issue; they simply cite generic sovereign immunity caselaw. (*Id.*) Plaintiffs do not address Defendants' sovereign immunity arguments; as such, the court may consider the issue waived and Counts 2 and 4 abandoned. (*See generally* Pls.' Opp.) *Powell v. United States*, No. 18-CV-5378 (ERK) (MMH), 2024 WL 4329842, at *7 (E.D.N.Y. Aug. 20, 2024) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims."); *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) (affirming dismissal of claims "on the ground that they were 'abandoned' by [plaintiff] when she failed to oppose them in her opposition to [defendant's] motion to dismiss"). Nevertheless, because Counts 2 and 4 fail on the merits, it is not necessary to reach the sovereign immunity issue, or Plaintiffs' waiver thereof. *See, e.g., Shan v. China Constr. Bank Corp.*, No. 9-CV-8566 (DLC), 2010 WL 2595095, at *5 n.12 (S.D.N.Y. June 28, 2010) (declining to address issue of sovereign immunity where plaintiffs' claims failed on the merits); *AFSCME Loc. 818 v. City of Waterbury*, 389 F. Supp. 2d 431, 438 n.4 (D. Conn. 2005) (same). Defendants' request to dismiss Counts 2 and 4 on the basis of sovereign immunity is therefore denied.

In sum, Defendants' motion to dismiss the TAC pursuant to Rule 12(b)(1) is denied.

### B.  Rule 12(b)(6)

Defendants also move to dismiss the TAC under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (*See generally* Defs.' Mot.) For reasons that will become clear in the

ensuing analysis, the court considers Count 4 first before considering the remaining counts in turn.

### 1.  Count 4: Fifth Amendment Equal Protection

In Count 4, Plaintiffs allege that Defendants "applied otherwise facially neutral policies, procedures, guidance, and adjudication standards in a discriminatory manner . . . for the purpose of delaying and denying visa petitions and immigrant visa applications filed on behalf of beneficiaries of Yemeni . . . origin." (TAC ¶ 583.) Specifically, Plaintiffs claim that Defendants violated Maryam's Fifth Amendment right to equal protection[6] when they delayed and attempted to revoke her I-130 Petition, and delayed and denied Abdulla's visa application, on the basis of their Yemeni heritage. (*Id.* ¶¶ 583-95.)

Defendants argue that Count 4 should be dismissed because Maryam has no constitutional interest in Abdulla's visa application, and, in any event, Plaintiffs fail to state an equal protection claim. (Mot. at 17.) Plaintiffs contend that that they plausibly allege an equal protection violation because Defendants "erected barriers" to immigration benefits, including "policies and practices applied only to the immigration benefits applications of Yemeni-Americans and their family members." (Opp. at 18-19.) Plaintiffs do not address Defendants' argument that Maryam has no constitutional interest in Abdulla's visa application. (*See generally id.*)

The court concludes that the doctrine of consular nonreviewability bars consideration of Count 4.

As an initial matter, visa applicants like Abdulla "have no equal protection rights under the Fifth Amendment." *Algazali v. Blinken*, No. 23-CV-6038 (LGS), 2025 WL 357721, at *5

---

[6] The Fifth Amendment does not contain an equal protection clause, but there is an equal protection "guarantee implicit in the Fifth Amendment's Due Process Clause," *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017).

(S.D.N.Y. Jan. 31, 2025); *Muñoz*, 602 U.S. at 908. Thus, to the extent Count 4 alleges a Fifth Amendment equal protection violation on behalf of Abdulla, such claim is without merit.

Additionally, to the extent Count 4 alleges an equal protection violation on behalf of Maryam, such claim "falls squarely within the doctrine of consular nonreviewability." *Abdo v. Tillerson*, No. 17-CV-7519 (PGG), 2019 WL 464819, at *4 (S.D.N.Y. Feb. 5, 2019). Plaintiffs allege that Defendants "delayed and attempted to revoke" Maryam's I-130 Petition in accordance with discriminatory policies. (TAC ¶¶ 583, 591.) However, it is well-established that Plaintiffs cannot "circumvent [the doctrine of consular nonreviewability] by contending that the doctrine does not apply to a request that a visa be adjudicated (as opposed to granted) within a reasonable period of time." *Li v. Chertoff*, No. 6-CV-13679 (LAP), 2007 WL 541974, at *1 (S.D.N.Y. Feb. 16, 2007). Indeed, an assessment of the merits of Maryam's Fifth Amendment claim would necessarily "thrust this Court into the forbidden realm of reviewing consular visa decisions," including whether the Executive did, in fact, apply the contested policies and procedures in a discriminatory manner. *Al Makaaseb Gen. Trading Co. v. Christopher*, No. 94-CV-1179 (CSH), 1995 WL 110117, at *4 (S.D.N.Y. Mar. 13, 1995); *see also Coniglio v. Garland*, 556 F. Supp. 3d 187, 201 (E.D.N.Y. 2021) ("[J]udicial scrutiny of the predicate for the consular decision necessarily causes the court to interfere with the process of the decision which it has been precluded from reviewing."). Thus, because Plaintiffs ask the court to review the reasoning behind the consular's alleged delay and attempted revocation of Maryam's Petition, their Fifth Amendment claim is barred by the doctrine of consular nonreviewability.

Nor does the exception to the doctrine of consular nonreviewability apply in these circumstances. First, it is unclear whether Maryam can invoke the exception as a legal permanent resident,

rather than a U.S. citizen. *See Abdo*, 2019 WL 464819, at \*4 (concluding that a legal permanent resident cannot invoke the exception to the doctrine of consular nonreviewability). Second, assuming Maryam can invoke the exception, the TAC alleges no independent violation of her constitutional rights. *See Muñoz*, 602 U.S. at 908. Therefore, the exception does not apply, and the doctrine of consular nonreviewability bars consideration of Count 4.

Finally, even if the doctrine of consular nonreviewability did not apply—and it does—the court would nonetheless conclude that Count 4 fails to state a claim upon which relief may be granted. Although USCIS revoked its approval of Maryam's Petition on June 22, 2017, it ultimately approved her Petition on June 29, 2022. (USCIS Decision at ECF pp. 67-70; TAC ¶ 96.) Plaintiffs then transferred their case from the Kuala Lumpur Embassy to the Djibouti Embassy so that the Djibouti Embassy could process Abdulla's visa application. (TAC ¶¶ 97-99, 131.) The TAC does not plausibly allege that *Maryam's* I-130 Petition—as opposed to *Abdulla's* visa application—was subjected to any discriminatory conduct or treatment. Rather, it simply claims that Defendants "delayed and attempted to revoke" Maryam's I-130 Petition in accordance with "policies, procedures, guidance, and adjudication standards" applied in a discriminatory manner against Yemeni people. (TAC ¶¶ 583, 591.) The court is not required to accept as true such "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Algazali*, 2025 WL 357721, at \*5 (rejecting similar claim where the complaint "does not allege that [the U.S.-citizen husband] suffered any adverse treatment with respect to his ability to petition as a spouse on behalf of his [noncitizen] wife," and noting that "[w]hatever rights remain for [the wife] to obtain a visa belong to her, and [the husband] cannot assert those rights on her behalf").

The only factual support for Plaintiffs' claim of discrimination is a WikiLeaks article, appended to the TAC, which purports to contain a September 29, 2009, USCIS policy that all Yemeni I-130 petitions be considered "fraudulent until proven otherwise." (WikiLeaks Exhibit (Dkt. 552-1) at ECF p. 307.) Putting aside the obvious authenticity issues, the TAC contains no plausible allegation that USCIS applied this alleged policy to Maryam's I-130 Petition, which was ultimately approved. Additionally, even if USCIS maintained this policy toward Yemeni applicants, it is unclear whether the court has the authority to question it, given the wide discretion afforded to the Executive in immigration-related matters. *See Muñoz*, 602 U.S. at 907 (noting that the "admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments [and is] largely immune from judicial control"); *Trump*, 585 U.S. at 711 (Kennedy, J., concurring) (acknowledging that "[w]hether judicial proceedings may properly continue in [a case alleging religious animus], in light of the substantial deference that is and must be accorded to the Executive in the conduct of foreign affairs, . . . is a matter to be addressed in the first instance on remand"); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 562 n.12 (E.D.N.Y. 2019) (commenting, "it appears that no court has . . . determine[d] definitively when, if ever, and to what extent a court can review policies concerning immigration and national security when faced with constitutional challenges to those policies"). Thus, even if the doctrine of consular nonreviewability did not apply, the court would conclude that Count 4 fails to state a claim upon which relief may be granted. Count 4 is dismissed.

### 2. Count 1: Bad Faith

In Count 1, Plaintiffs allege that "[the] consular officer[']s determination [was] made in bad faith." (TAC ¶¶ 545-52 (capitalizations omitted).) Specifically, Plaintiffs assert that

"[DHS], through USCIS, established the identity of Plaintiff Abdulla through the DNA testing that the Department of State requested"; as such, "the consular officer could not have possibly in good faith believed that Plaintiff Abdulla was anyone other than who he claimed to be through both his documentation and DNA testing." (*Id.* ¶¶ 545-46.) Thus, Plaintiffs contend that the consular officer's decision to deny Abdulla's visa application was "necessarily made in bad faith." (*Id.* ¶ 550.) Additionally, Plaintiffs claim that the "timing of the finding of alleged inadmissibility is also suspect, given that there was no follow [up] interview," and USCIS denied Abdulla's application *after* Plaintiffs filed the Second Amended Complaint. (*Id.* ¶ 551.) Thus, Plaintiff asserts that "[t]he actions of the Defendants were clearly retaliatory in nature and should not be viewed as a valid exercise of its discretion to issue or refuse a visa." (*Id.* ¶ 552.)

The doctrine of consular nonreviewability bars consideration of Count 1. Plaintiffs challenge the consular officer's decision to deny Abdulla's visa application; therefore, the doctrine of consular nonreviewability applies unless Plaintiffs qualify for the exception. Abdulla cannot invoke the exception to the doctrine of consular nonreviewability "because he has no constitutional right of entry to this country as a nonimmigrant or otherwise." *Muñoz*, 602 U.S. at 908. Thus, "so far as [Abdulla] is concerned, the doctrine of consular nonreviewability applies." *Id.* Moreover, even assuming that Maryam can invoke the exception as a lawful permanent resident, not a U.S. citizen, the TAC does not plausibly allege a violation of Maryam's constitutional rights. (*See* TAC ¶¶ 545-52, 571-95; Pls.' Opp. at 8-9.)

Count 4 of the TAC—the only count containing an alleged violation of Maryam's constitutional rights—alleges that Defendants violated Maryam's Fifth Amendment right to equal protection. (TAC ¶¶ 571-95.) However, as explained above, Count 4 is itself barred by the doctrine of consular nonreviewability. (*See supra*

Section III.B.1.) Thus, because the TAC alleges no other violation of Maryam's constitutional rights,[7] the doctrine of consular nonreviewability bars consideration of Count 1. *Trump*, 585 U.S. at 703.

Even if Count 4 were not independently barred by the doctrine of consular nonreviewability, it is unclear whether the Supreme Court would recognize the right asserted by Maryam in this context: the right of a legal permanent resident to have an I-130 petition filed on behalf of her noncitizen son processed without regard to her race, national origin, or ethnicity. The exception to the doctrine of consular nonreviewability has been recognized in only one context: where plaintiffs assert a First Amendment right to have a visa applicant present their ideas in the United States. *See Napolitano*, 573 F.3d at 125. Neither the Second Circuit nor the Supreme Court has extended this "narrow exception" to other constitutional claims. *Khan v. U.S. Dep't of State*, 722 F. Supp. 3d 92, 101 (D. Conn. 2024); *see also Muñoz*, 602 U.S. at 908 (holding that a U.S. citizen "does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country"); *Chen*, 2025 WL 606221, at *7 (concluding that a U.S. citizen "does not have a fundamental liberty interest in living in the United States with his [noncitizen] mother"). Plaintiffs cite no authority in which a court has embraced their asserted Fifth Amendment right. Thus, even if Count 4 were not itself barred by the doctrine of consular nonreviewability, in light of the exception's narrow construction by both the Supreme Court and

---

[7] Although the TAC contains no such allegation, to the extent Maryam may allege that the denial of Abdulla's visa application violates her fundamental right to live with Abdulla in the United States, that claim would be meritless. *See Muñoz II*, 602 U.S. at 908 (holding that a U.S. citizen "does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country"); *Chen*, 2025 WL 606221, at *7 (concluding that a U.S. citizen "does not have a fundamental liberty interest in living in the United States with his [noncitizen] mother").

the Second Circuit, the court would decline to apply the exception to this context. *See Algazali*, 2025 WL 357721, at *5 ("Initial admission to the United States is a privilege, and the application for it entails no constitutional rights because the power to admit or exclude visa applications is a sovereign prerogative."). Count 1 is dismissed.

### 3. Count 2: Immigration and Nationality Act, 8 U.S.C. § 1152(a)

In Count 2, Plaintiffs allege that Defendants "subjected [them] to separate, distinct visa adjudication procedures based on the Plaintiff Maryam's Yemeni race, ethnicity, [or] national origin, as well as Plaintiff Abdulla's Yemeni race, nationality, place of birth, or place of residence," in violation of their rights under the INA to be free from discrimination based on their ethnicity and national origin. (TAC ¶¶ 553-61 (citing 8 U.S.C. § 1152(a)).) These "distinct visa adjudication procedures" included:

> [T]he requirement that Plaintiff submitted Form DS-5535; the Djibouti Embassy's illusory evidence submission process which deliberately fails to receive, process, and catalog all evidence submitted to the Embassy in support of visa applications; and the [State Department] visa reciprocity schedule which declares unreliable per se all civil records issued by Yemeni civil authorities; and the use of USCIS discriminatory I-130 adjudication and revocations procedures.

(*Id.* ¶ 557.) Defendants argue that Count 2 should be dismissed because Section 1152(a)'s non-discrimination prohibition applies only to the *issuance* of immigrant visas, not to the determination of admissibility, which Plaintiffs challenge here. (Mot. at 13-14.) Plaintiffs do not defend Count 2 in their memorandum in opposition. (*See generally* Pls.' Opp.)

21

Count 2 implicates two distinct provisions of the INA: Section 1182 and Section 1152. Section 1182 "defines the pool of individuals who are admissible to the United States." *Trump*, 585 U.S. at 695 (citing 8 U.S.C. § 1182). "Its restrictions come into play at two points in the process of gaining entry (or admission) into the United States": first, in the determination of admissibility by a consular officer, and second, upon arrival in the United States, where an immigration officer may determine that a person is inadmissible notwithstanding the consular officer's initial determination. *Id.* Relevant here is the first stage of this process: the consular officer's determination of inadmissibility. Section 1182 lists the various bases for an inadmissibility determination, including the basis provided by the consular officer in Abdulla's case: "Any [person] who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). (*See* Second Djibouti Denial at ECF p. 619-20.) Section 1182 does not contain an antidiscrimination provision. *See generally* 8 U.S.C. § 1182.

Sections 1182 and 1152 "operate in different spheres": while Section 1182 "defines the universe of [people] who are *admissible* into the United States (and therefore eligible to receive a visa)," Section 1152(a)(1)(A) "prohibits discrimination in the *allocation* of immigrant visas based on nationality and other traits." *Trump*, 585 U.S. at 695 (emphases added); *see also* 8 U.S.C. § 1152(a)(1)(A) ("[N]o person shall receive any preference or priority or be discriminated against in the *issuance* of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." (emphasis added)). In other words, Section 1552 prohibits discrimination in the *issuance* of an immigrant visa, it does not prohibit discrimination in the consular officer's determination of admissibility under Section 1182. *Trump*, 585 U.S. at 695 ("The distinction between admissibility—

to which § 1152(a)(1)(A) does not apply—and visa issuance—to which it does—is apparent from the text of the provision, which specifies only that its protections apply to the 'issuance' of 'immigrant visas,' without mentioning admissibility or entry.").

To the extent Count 2 challenges the procedures and policies relating to the consular officer's determination of admissibility, it is foreclosed by *Trump v. Hawaii*. Each of the challenged procedures listed above relate to the consular officer's determination of admissibility, not to the ultimate visa issuance decision. (*See* TAC ¶ 557.) Because Section 1152(a)(1)(A) does not apply to admissibility determinations, Plaintiffs' discrimination claim fails as a matter of law. *See Alharbi*, 368 F. Supp. 3d at 561 (rejecting a similar claim).

To the extent Count 2 challenges "visa adjudication procedures" more broadly, such a claim is "outside the purview of [Section 1152]." *Algazali v. Blinken*, No. 23-CV-6038 (LGS), 2025 WL 357721, at *5 (S.D.N.Y. Jan. 31, 2025). While Section 1152(a)(1)(A) prohibits discrimination in the *issuance* of a visa, "[t]his anti-discrimination guarantee . . . is subject to one overriding limitation, that '[n]othing in this paragraph shall be construed to limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications.'" *Id.* (quoting 8 U.S.C. § 1152(a)(1)(B)). Thus, insofar as Count 2 challenges the "procedures for the processing of immigrant visa applications," it is barred by Section 1152(a)(1)(B). Count 2 is dismissed.

####     4.    Count 3: Right to Counsel

In Count 3, Plaintiffs allege that Defendants violated Abdulla's "statutory right to counsel" during his visa interviews at the Kuala Lumpur Embassy. (TAC ¶¶ 562-70.) Specifically, Plaintiffs contend that the Administrative Procedures Act (the "APA"), 5 U.S.C. § 555(b), guarantees visa applicants the right to counsel at their visa interviews, and Defendants violated this right when the

Kuala Lumpur Embassy "refused to allow Plaintiffs to be repre-
sented or accompanied by counsel at previous visa interviews."[8]
(*Id.* ¶¶ 562, 566.) Defendants argue that Count 3 should be dis-
missed because Abdulla's visa application is governed by the INA,
not the APA, and the INA does not provide a right to counsel at
visa application interviews. (Mot. at 14-16; Opp. at 9 (agreeing
that the INA does not provide a right to counsel in these circum-
stances).)

Plaintiffs' invocation of the right to counsel under the APA is un-
availing. In *Ardestani,* the Supreme Court reaffirmed its prior
holding "that Congress intended the provisions of the [INA] . . .
to supplant the APA in immigration proceedings." *Ardestani v.
I.N.S.,* 502 U.S. 129, 133 (1991) (citing *Marcello v. Bonds,* 349
U.S. 302, 310 (1955)). Although *Ardestani* and *Marcello* "as-
sessed the applicability of the APA to traditional removal
proceedings," the reasoning of those cases "is not limited to pro-
ceedings in the traditional removal process." *Las Americas
Immigrant Advoc. Ctr. v. Wolf,* 507 F. Supp. 3d 1, 29 (D.D.C.
2020). Instead, *Ardestani* explained that "immigration proceed-
ings . . . are not governed by the APA." 502 U.S. at 133; *see also
Patel v. Holder,* 406 F. App'x 502, 504 (2d Cir. 2010) ("[Plain-
tiff's] argument that the agency violated the notice requirements
of the APA is frivolous because the Supreme Court has held that
the APA does not apply to immigration proceedings."). Because
the APA does not apply in these circumstances, Plaintiffs' right to
counsel claim is meritless. Count 3 is dismissed.

5. Count 5: Breach of Contract

Count 5 alleges breach of contract based on Defendants' alleged
violation of the duty of good faith and fair dealing. (TAC ¶¶ 596-
610.) Specifically, Plaintiffs claim that by collecting filing fees for

---

[8] The court presumes that Plaintiffs refer to Abdulla's April and August
2016 interviews at the Kuala Lumpur Embassy. (TAC ¶¶ 50-54.)

visa applications, Defendants "created a contract of sale with the Plaintiffs for the proper adjudication of their visas." (*Id.* ¶ 597.) Plaintiffs contend that Defendants violated the covenant of good faith and fair dealing implicit in all contracts when they denied Abdulla's visa application in the face of DNA evidence confirming his identity. (*Id.* ¶¶ 606-08.) In other words, the Defendants "acted in bad faith to refuse Plaintiff Abdulla's visa on a ground which they knew did not apply to him." (*Id.* ¶ 608.) Defendants assert that Plaintiffs' breach of contract claim is meritless. (Mot. at 18.)

The doctrine of consular nonreviewability bars consideration of Count 5. Although Plaintiffs package Count 5 as a breach of contract claim, in reality, Count 5 is merely duplicative of their bad faith claim. (*See* TAC ¶ 608 (alleging breach of contract based on Defendants' "bad faith . . . refus[al] [of] Plaintiff Abdulla's visa on a ground which they knew did not apply to him").) Because Count 5 seeks review of the consular officer's decision to deny Abdulla's visa application, it is barred by the doctrine of consular nonreviewability unless the exception applies. *Muñoz*, 602 U.S. at 908. However, as noted above, the TAC does not plausibly allege that the denial of Abdulla's visa burdens the constitutional rights of a U.S. citizen. Therefore, the exception does not apply, and the doctrine of consular nonreviewability bars consideration of Count 5.

Even if the doctrine of consular nonreviewability did not apply—and it does—the court would nonetheless conclude that Count 5 fails to state a claim upon which relief may be granted. Plaintiffs cite no authority—and the court is aware of none—to support their claim that the acceptance of filing fees creates a binding contract between the Executive and Plaintiffs, such that the court may inquire into the bases for the denial of Abdulla's visa application. (*See* TAC ¶¶ 596-610; Opp. at 12-13.) Indeed, such a

holding would fly in the face of the doctrine of consular nonre-viewability. Thus, even if the doctrine of consular nonreviewability did not apply, the court would conclude that Count 5 fails to state a claim upon which relief may be granted. Count 5 is dismissed.

In sum, Defendants' motion to dismiss the TAC pursuant to Rule 12(b)(6) is granted. Because Plaintiffs have not requested leave to amend, (*see generally* Opp.), and because the court has already allowed Plaintiffs multiple opportunities to replead, the TAC is dismissed with prejudice. *See Faulkner v. Verizon Commc'ns, Inc.*, 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002) (adopting same approach); *see also Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is freely granted," the court need not "grant a request that was not made."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) ("Because an amendment is not warranted absent some indication as to what [Plaintiffs] might add to their complaint in order to make it viable, the District Court [i]s under no obligation to provide [Plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Because Plaintiffs have not requested leave to amend, such dismissal is WITH PREJUDICE.

SO ORDERED.


Dated:     Brooklyn, New York
           May 19, 2025

                                    s/Nicholas G. Garaufis

                                    NICHOLAS G. GARAUFIS
                                    United States District Judge